*Spaulding*
*v.*
*Bancroft.*

DANIEL P. COLBURN *versus* JONATHAN BANCROFT

The enrolment in the militia, of *D. P. Colburn*, by the name *D. P. Coburn*, was *held* to be valid.

Where a captain in the militia ordered his company to appear at *twelve* o'clock, noon, on the first Tuesday of May, " for *military duty* and *inspection,*" it was *held*, that such order was valid, although the Revised Stat. *c*. 12, § 76, require that the *inspection* shall take place at *one* o'clock in the afternoon of that day, he being authorized to *exercise and discipline* his company at any time on that day.

Where the captain of a company directed the clerk to deliver the order for warning the members, to the person named therein, if he should find him at home, but if he did not, to erase his name and insert that of another person mentioned by the captain, and deliver the order to him, it was *held* that as this was not a delegation by the captain of a *discretionary* power, to the clerk, but a positive direction to be executed in a certain event, the clerk might legally make such substitution, in the absence of the captain, upon the happening of such event, and that a warning by the substitute would be valid.

THIS was a petition for a *certiorari*, to a justice of the peace, setting forth, that a complaint was filed with such justice, against the petitioner, by Jonathan Bancroft, the clerk of a militia company in Tyngsborough, for neglecting to meet with the company on the first Tuesday of May, 1837 ; that at the

trial of the complaint, before the justice, Bancroft produced the roll of the company for the year 1837, which contained the name of Daniel P. *Coburn*, but not the name of the petitioner; that the order of the captain to notify Coburn was then produced, and it was proved, that it was originally directed by the captain to Joseph Fletcher, who was not a member of the company, nor in any manner liable to do duty therein, and that the name of Nathaniel Lawrence 2d was inserted in the order as the person to notify the men, by the clerk; and that it also appeared by such order, that the soldiers were required to meet at twelve o'clock on the first Tuesday of May.

The petitioner alleged, that these proceedings ought to be quashed for the following, among other reasons.

1. Because the petitioner was not enrolled in the company, in the year 1837.

2. Because the order of the captain to notify the meeting of the company was directed to a person not a member thereof.

3. Because the officers and soldiers were required, by such order, to meet at twelve o'clock, noon, on the first Tuesday in May, instead of one o'clock in the afternoon of that day.

*Mann* and *Wentworth*, for the petitioner, to the point, that the captain could not delegate to the clerk the power to substitute the name of Lawrence as the warning officer, in the order, cited *Commonwealth* v. *Kellogg*, 9 Pick. 557.

*Farley* and *B. Russell*, for the respondent.

MORTON J. afterward drew up the opinion of the Court. Several of the points raised in this case were considered and decided in the last; and it will not be necessary again to recur to them. The remaining questions relate to the enrolment of the petitioner, to the legality of the order for the meeting of the company, and to the validity of the warning.

1. The only objection to the enrolment consists in an error in the petitioner's name. It is written in the roll and in the order for warning, " Daniel P. Coburn "; whereas his true name is alleged to be " Daniel P. Colburn." It is very clear that this is an immaterial error. Even in a plea in abatement such an objection could not prevail. The orthography and pronunciation of proper names are arbitrary; and errors in spelling, if the sound is not changed, are never fatal. The petitioner's name is

sometimes written in the one way, and sometimes in the other, and the pronunciation of the two are so similar, that it is difficult in conversation to distinguish them. It is not even certain whether the petitioner or the respondent has adopted the most correct orthography ; and it would be difficult to conceive a case in which the rule of *idem sonans*, would more strongly apply. This doctrine was carried a great length in the case of *Tibbetts* v. *Kiah*, 2 N. Hamp. R. 557, where it was held upon a plea in abatement, that *Kiah* and *Currier*, though spelt very differently, were pronounced so nearly alike as to be deemed the same name. Not only this, but many other cases cited, go very much further than we are required to do, to sustain these proceedings.

2. It is contended that the commanding officer had no power to order his company to appear *at twelve* of the clock, on the first Tuesday in May. The Revised Stat. *c.* 12, § 76, peremptorily require the commanding officer of each company, to " parade his company on the first Tuesday in May, annually, at *one* o'clock in the afternoon, for the purpose of inspecting, examining and taking an exact account of all the equipments of his men," &c. This direction is imperative and leaves no discretion, as to the time or mode of executing it. The commanding officer clearly can order out his men for *inspection*, at no other time than the one fixed in the statute ; and he might as well appoint any other day as any other hour in the day. But this same section gives to the commanding officer other powers, than those of inspection. He is authorized to " exercise and discipline, as well as inspect his company." If there was no limitation upon this authority, he would have a right to exercise it at such times as he might judge proper. But the statute does impose a restriction, beyond which he cannot go. This restriction relates to time, and limits him to the first Tuesday in May ; and he may rightfully " exercise and discipline " his company, and, for that purpose, call it out, at any time " on said day." It may as properly be said, that he cannot perform this duty after one o'clock as before that hour.

The members of the company were ordered to appear "for military duty and inspection." The " military duty " men-

tioned in the company order, could be no other than " exercise and discipline "; and for this purpose the commanding officer had a right to call them out at any time during the day. The roll was not in fact called, till after one o'clock ; and no inconvenience or hardship was imposed upon the members of the company. The order, being for military duty, is in the opinion of the Court valid, notwithstanding it was also for in spection, and was obligatory on all those who were duly notified under it.

3. The petitioner further objects to the authority of the warning officer, because, as he alleges, he was not ordered to perform that duty. On the production of the captain's order, it appears to be directed to the non-commissioned officer who executed it, and is itself a valid order. But it appears from inspection, that the order was first directed to Joseph Fletcher, and that afterwards his name was erased, and that of Lawrence inserted. The petitioner contends that if this was not a forgery which would invalidate the order, yet that the direction to Lawrence was unauthorized, and could confer on him no power to execute it. The reason for the substitution of one of those persons for the other, is fully explained by the evidence introduced before the justice. It appears that the one name was struck out and the other introduced by the clerk in the absence of the captain.

The Revised Stat. c. 12, § 88, require the commanding officer of each company, when he shall order out his company, to issue his order for the purpose, "to some one or more of the non-commissioned officers or privates," commanding them " to notify the men enrolled in such company, to appear at the time and place appointed." And the 89th section provides, that " no notice shall be legal except the same be given by the non-commissioned officer or private, ordered to notify," in the manner therein prescribed. The power to select the person or persons to perform this service, (warning the members of the company,) is vested in the commanding officer. It is a discretionary power, which cannot be delegated. The order must emanate from the mind of this officer ; but he may employ the clerk or any other person to reduce it to writing. He must select the person to execute the order ; but he may direct an-

other to insert the name. He may also make a conditional, as well as an absolute, appointment. He cannot authorize another to exercise this discretionary power for him ; but he can give directions, to be executed positively, or upon the happening of some future and contingent event. The power of his servant or agent will depend, not in any degree upon his discretion, but upon the happening of the contingency. If the order had been made to a particular person, and the bearer of the order had been directed, in the event of his death, to substitute another person by name, there could be no doubt, that, on the happening of the event, the bearer might lawfully insert the other name. But if the directions to the bearer were to insert the name of another person in case he should judge the one named unfit to perform the duty, it would be an unauthorized delegation of power. Such, however, was not the case here. The captain directed the clerk to deliver the order to Fletcher, if he should find him at home, but, if he did not, to erase his name and insert Lawrence's name and deliver it to him. This is a direct and positive order, to be executed in a certain event. It gave him no discretion. The contingency did happen. The order became peremptory, and the clerk was bound to execute it ; and when done, it was, in law, the act of the captain, as much as if done with his own hand. The appointment of Lawrence was therefore clearly valid.

*Petition dismissed.*